# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**GLEN R. MEADE,**

      **Petitioner,**

**v.**                                  **Case No. 2:16-cv-11303**

**DAVID BALLARD, Warden,**
**Mt. Olive Correctional Complex,**

      **Respondent.**

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

Pending before the Court are the following: Motion by Glen R. Meade to Proceed with § 2254 Petition Due to Inordinate Unjustifiable Delay, (ECF No. 1); Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, (ECF No. 4); Amended Motion to Proceed with § 2254 Petition Due to Inordinate Unjustifiable Delay, (ECF No. 5); Motion for the Appointment of Counsel, (ECF No. 6); Motion to Proceed In Forma Pauperis, (ECF No. 8); and Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 9). This case is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition. (ECF No. 2). Having fully considered the record, the undersigned **FINDS** that Petitioner's petition for federal habeas relief is premature, and Petitioner has failed to supply grounds sufficient to justify a waiver of his obligation to exhaust state remedies. Therefore, the undersigned respectfully **RECOMMENDS** that the presiding district judge **DENY**

1

Petitioner's pending motions; **DISMISS**, without prejudice, Petitioner's petition for a writ of habeas corpus; and **REMOVE** this action from the docket of the Court.

## I.    <u>Relevant Facts and Procedural History</u>

On April 9, 2007, Petitioner Glen R. Meade ("Meade") entered a guilty plea in the Circuit Court of Mingo County, West Virginia on two counts of first degree sexual assault of a minor (Counts I and XVI) and two counts of sexual abuse by a parent, guardian, or custodian (Counts XXXI and XLVI). (ECF No. 13-12). Meade was sentenced on May 7, 2007 to an indefinite term of imprisonment of not less than fifteen years nor more than thirty-five years on each count of sexual assault and an indefinite term of not less than ten years nor more than twenty years on each count of sexual abuse by a custodian. The sentences for Counts I and XVI were ordered to run consecutively; the sentence for Count XXXI was to run concurrent with the sentence for Count I, while the sentence for Count XLVI was to run concurrent with the sentence for Count XVI. (ECF No. 13-13). Meade did not file an appeal at that time; instead, he filed a motion for reconsideration of his sentence, which was denied. (ECF No. 13 at 4).

Nearly seven years later, on April 7, 2014, Meade filed a petition for a writ of habeas corpus in the Circuit Court of Mingo County. (ECF No. 13-14; ECF No. 13-15 at 2). On May 8, 2014, before any action was taken on the state habeas petition, Meade filed a motion in the Circuit Court asking for a resentencing to allow him the opportunity to file a direct appeal. (ECF No. 13-15 at 2; ECF No. 13-18). Meade was appointed counsel, and on August 4, 2014, Meade's counsel requested a hearing on the pending petition for a writ of habeas corpus. A hearing was scheduled on August 19, 2014 and resulted in the issuance of a scheduling order. (ECF No. 13-23). The scheduling order provided a deadline of September 30, 2014 for filing an amended habeas petition and set an omnibus evidentiary

hearing to take place on October 23, 2014. (*Id.*). On August 20, 2014, Meade filed an emergency motion to stay the state habeas proceeding to allow him to file a direct appeal. (ECF No. 13-4). On September 8, 2014, the Circuit Court granted Meade's motion to stay and motion for a resentence. (ECF No. 13-5). Meade was resentenced that same day.

On October 3, 2014, Meade filed a petition for appeal with the Supreme Court of Appeals of West Virginia ("WVSC"). (ECF No. 13-25). The WVSC docketed the appeal and entered a scheduling order. (*Id.*). While the appeal was pending, Meade filed a motion with the Circuit Court of Mingo County, seeking reconsideration of his sentence under Rule 35(b). (ECF No. 13-26). The motion was denied, in part, because of the pending appeal. (ECF No. 13-27). On August 31, 2015, the WVSC issued a memorandum opinion affirming Meade's conviction and sentence. (ECF No. 13-30). A mandate finalizing the WVSC's judgment was entered on September 30, 2015. (ECF No. 13-29).

On August 24, 2015, before the WVSC's judgment, Meade filed a motion with the Circuit Court of Mingo County, asking for leave to file *pro se* documents and for funds to hire an expert witness. (ECF No. 13-31 at 2-5). On November 18, 2015, Meade filed another *pro se* motion, requesting that the stay be lifted on his habeas proceeding, that a scheduling order be entered, and that new counsel be appointed. (*Id.* at 6-9). On April 18, 2016, Meade filed a motion to compel a ruling on his request for new counsel and a motion to add an ineffective assistance of counsel claim to his habeas petition. (ECF No. 13-32). When the Circuit Court failed to act on these motions, Meade filed a petition in the WVSC, seeking a writ of mandamus. (ECF No. 13-33).

On June 15, 2016, the Circuit Court lifted the stay and appointed new counsel to represent Meade on the habeas petition. (ECF No. 13-7). A status conference was held on July 19, 2016, and a scheduling order was entered on July 26, 2016, which imposed a

deadline of September 15, 2016 for filing an amended petition and set an omnibus evidentiary hearing to take place on October 11, 2016. (ECF No. 13-36). Shortly thereafter, Meade filed a "Motion for Status Update" in which he insulted his newly appointed counsel; complained that the state process was inadequate and ineffective; accused the presiding judge of being partial to the state and of having a "God mentality"; and objected to the omnibus hearing unless all of his doctors could be present to testify about his mental competency. (ECF No. 13-37). Meade finished the motion by asking the Circuit Court to "appoint co-counsel" to represent him in the habeas action and to "get this over with, so I can go to federal court and show them how incompetent and prejudice this court seems to be." (*Id.* at 4-5).

Approximately two weeks after the scheduling order was entered by the Circuit Court, and before the deadline for filing an amended petition for a writ of habeas corpus, Meade sent to this Court his first Motion to Proceed with §2254 Petition due to Inordinate Unjustifiable Delay.[1] Notwithstanding his allegations of inordinate delay, on September 25, 2016, Meade and his counsel jointly requested an extension of the deadlines imposed by the scheduling order to allow him additional time to amend his habeas petition. (ECF No. 13-8). The Circuit Court granted the extension, and on November 17, 2016, Meade filed an amended petition for a writ of habeas corpus in the Circuit Court of Mingo County. (ECF No. 13-41).

Less than three weeks later, Meade filed an emergency motion, seeking leave to withdraw the amended petition and requesting the appointment of new counsel due to his current counsel's alleged ineffective assistance. (ECF No. 13-2). The Circuit Court held

---

[1] The Motion was not docketed until November 22, 2016; however, the envelope that accompanied the Motion indicates that the Motion was sent from the Mount Olive Correctional Complex on August 10, 2016 and was received in the Clerk's Office on August 12, 2016. (ECF No. 1-1 at 2).

a status conference on December 20, 2016, at which Meade's motion was denied. (ECF No. 13-43). A date was set for the State's response to the amended habeas petition, and the Circuit Court rescheduled the omnibus evidentiary hearing to take place in February 2017. (ECF No. 13-43).

On December 23, 2016—three days after the status conference was held—Meade filed a *pro se* petition for a writ of prohibition with the WVSC, asking for an order staying his habeas proceeding, compelling the Circuit Court to appoint him new counsel, and allowing him to withdraw his amended petition. (ECF No. 13-44). The WVSC initially refused the petition on the ground that Meade was represented by counsel and, thus, was prohibited from filing *pro se* documents. (ECF No. 13-47). Nevertheless, on February 6, 2017, the WVSC granted Meade's *pro se* motion for reconsideration, docketed his petition for a writ of prohibition, and set a deadline for Meade's counsel to file a response. (ECF No. 14-1 at 1). On February 21, 2017, the Circuit Court of Mingo County began the previously scheduled omnibus evidentiary hearing on the habeas petition. However, upon learning that Meade had filed a petition for a writ of prohibition, which was still pending in the WVSC, the Circuit Court recessed the hearing. Currently, thirty-five months have passed since Meade first filed his state habeas petition.

## II.  **Standard of Review**

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in state custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." As a prerequisite to filing a § 2254 action, the habeas petitioner must exhaust his state remedies. 28 U.S.C. § 2254(b)(1)(A). Exhaustion of state

remedies requires the petitioner to fairly present the federal constitutional issues to the state courts and allow the courts a reasonable opportunity to resolve the issues. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971). "The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity." *Preiser v. Rodriguez,* 411 U.S. 475, 491 (1973). Because the purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Picard,* 404 U.S. at 275, fair presentation demands that the state courts be fully informed of "'both the operative facts and the controlling legal principles.'" *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000) (internal quotations omitted); *see, also*, *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) ("The exhaustion requirement ... codified in the federal habeas statute, 28 U.S.C. §§ 2254(b) and (c) ... serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." (citations omitted)). While it is unnecessary to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citations omitted). Instead, the petitioner must present the "substance of a federal habeas corpus claim" to the state courts. *Picard*, 404 U.S. at 278. "Exhaustion demands that the petitioner 'do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994) (quoting *Martens v. Shannon,* 836 F.2d 715, 717 (1st Cir. 1988)).

In general, a district court may not review a federal habeas petition unless there has been "total exhaustion" of the presented issues. *Rose v. Lundy*, 455 U.S. 509, 522, (1982). Thus, when a petitioner has failed to exhaust his state court remedies, a federal habeas petition should be dismissed. *See Preiser*, 411 U.S. at 477. "Where questions concerning exhaustion arise, the petitioner bears the burden of demonstrating that state remedies have, in fact, been exhausted." *Mallory*, 27 F.3d at 994 (citations omitted).

Notwithstanding the AEDPA's exhaustion requirement, a petitioner may proceed on an unexhausted petition when "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). These statutory exceptions apply "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth,* 454 U.S. at 3. In addition, a federal court may deny unexhausted claims that are plainly meritless "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(2); *see, also, White v. Keller*, No. 1:10-CV-841, 2013 WL 791008, at *5 (M.D.N.C. Mar. 4, 2013).

In West Virginia, exhaustion is accomplished in one of three ways: by (1) presenting the federal constitutional issues directly to the WVSC through an appeal of the conviction or sentence; (2) filing a petition for a writ of habeas corpus under the WVSC's original jurisdiction and receiving a dismissal with prejudice; or (3) filing a petition for a writ of habeas corpus in the appropriate circuit court followed by an appeal of any adverse judgment to the WVSC. *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D. W. Va. 1995); *Bayerle v. Godwin*, 825 F. Supp. 113, 114-15 (N.D. W. Va. 1993); *McDaniel v. Holland*, 631 F. Supp. 1544, 1545-46 (S.D. W. Va. 1986); *see, also, Gardner v. Plumley*, No. 2:12-cv-

03386, 2013 WL 5999041, at *5 (S.D. W. Va. Nov. 12, 2013). In each situation, the WVSC is given an opportunity "to pass upon and correct alleged violations of its prisoners' federal rights," as is consistent with the AEDPA's intent. *Picard,* 404 U.S. at 275. Therefore, in this case, unless Meade can demonstrate that he has provided the WVSC with a chance to consider each of the federal constitutional issues raised in his § 2254 petition, total exhaustion has not been achieved.

## III.    <u>Discussion</u>

Here, the parties implicitly agree that exhaustion has not occurred with respect to any of the claims raised in the § 2254 petition. The record is clear that the ineffective assistance of counsel claims contained in the federal petition have never been examined by any West Virginia court. Indeed, Meade admits that those claims currently rest on the doorstep of the state trial court. Meade's federal petition also includes claims of incompetency and excessive sentence, which were presented in some fashion to the WVSC; however, neither party asserts that the relevant federal constitutional issues were examined and exhausted on direct review, and similar claims remain pending in Meade's state habeas petition. Despite his acknowledged lack of exhaustion, Meade contends that the AEDPA's exhaustion requirement should be waived in this case, because the West Virginia courts have entirely failed to provide him with a speedy resolution of his state habeas petition. According to Meade, his court-appointed habeas counsel is incompetent, the trial court has needlessly delayed the proceedings, and his "habeas has been pending for over 31 months." (ECF No. 5). He complains that "[g]oing thru [sic] the motions of a habeas proceeding is pointless if it is not done right." (ECF No. 14 at 4).

The Fourth Circuit has recognized that, in extreme cases, state remedies "may be rendered ineffective by inordinate delay or inaction in state proceedings," so that

exhaustion of those remedies is unnecessary. *Ward v. Freeman*, 46 F.3d 1129, 1995 WL 48002, at *1 (4th Cir. 1995) (unpublished table decision). "[T]he relevant question is whether the given delay is so extraordinary that it amounts to a violation of the petitioner's right to due process." *Harper v. Ballard*, No. 3:12-00653, 2013 WL 285412, at *8 n.6 (S.D. W. Va. Jan. 24, 2013) (citations and markings omitted). To determine whether a delay amounts to a due process violation, the Fourth Circuit has utilized the four-factor speedy trial analysis outlined in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *See Ward*, 1995 WL 48002, at *1. Those factors include (1) the length of delay, (2) the reason for the delay, (3) the petitioner's assertion of his rights, and (4) any prejudice to the petitioner from the delay. *Id.* No one factor is dispositive of the issue; instead, they are to be considered together in light of the particular circumstances of the case. *Id.* at 533. Using this legal framework, the undersigned analyzes Meade's request for waiver of the exhaustion requirement.

To determine the length of the delay and the reason for delay, a review of Meade's history is required. Meade was convicted of his crimes in April 2007 and sentenced in May 2007. He did not immediately appeal his sentence or file a petition for a writ of habeas corpus. Instead, Meade waited until April 2014—almost seven years later—before seeking habeas relief. At about the same time he filed a petition for a writ of habeas corpus in the Circuit Court of Mingo County, Meade decided that he wanted to file a direct appeal with the WVSC. Because Meade had not timely filed a direct appeal in 2007, he had to be resentenced by the Circuit Court in order to restart the appeal period. Accordingly, Meade filed a motion for a resentencing in May 2014, which was ultimately granted in September 2014. In the interim, activity on Meade's state habeas petition proceeded at a reasonable rate, with a briefing schedule and omnibus evidentiary hearing set. Activity on the petition

ceased only because Meade sought and received a stay. Thus, at Meade's urging, the habeas proceeding laid dormant for approximately one year as the direct appeal proceeded through the WVSC.

On November 18, 2015, after receiving the WVSC's mandate, Meade filed a motion requesting that the stay of the habeas proceeding be lifted and that he be appointed new habeas counsel. At this point, nineteen months had passed since the filing of the habeas petition; however, those months were attributable to Meade's decision to stay the habeas action and proceed with a direct appeal. When the Circuit Court did not promptly rule on the motion to lift the stay and appoint substitute counsel, Meade filed a motion to compel the appointment of new counsel and to add a claim of ineffective assistance of counsel. Once again, the Circuit Court did not promptly address the motions. Consequently, Meade filed a petition for a writ of mandamus, which was pending in the WVSC when the Circuit Court lifted the stay. In total, the Circuit Court delayed seven months before ruling on Meade's motions and lifting the stay.

After the stay was lifted, and Meade was provided with new habeas counsel, a status conference was conducted, and a scheduling order was entered, setting new document deadlines and an omnibus evidentiary hearing. On August 1, 2016, just days after entry of the scheduling order, Meade began to complain about the competence of his newly appointed counsel, accused the Circuit Court of being biased, objected to the omnibus hearing, and generally denigrated the state's post-conviction process. Meade sent his first motion to this Court just two weeks after entry of the Circuit Court's scheduling order.

Next, in complete contradiction of his professed concerns about delay, Meade personally requested and received a two-month extension of time so that he could file an

amended state habeas petition. Although Meade later disavowed the amended petition, the record is clear that he expressly approved of and asked for the extension. Meade's counsel filed the amended petition on November 17, 2016. Less than three weeks later, Meade filed a *pro se* emergency motion to withdraw his amended petition and for appointment of new habeas counsel. On December 20, 2016, the Circuit Court held a status conference, denied Meade's motions, and rescheduled Meade's omnibus evidentiary hearing for the third time. By this time, another six months had passed, in part due to Meade's request for an extension of the filing deadline and his motion for replacement counsel.

On February 21, 2017, the omnibus evidentiary hearing convened. Once again, the hearing was not completed. This time, the hearing was postponed because Meade had filed a *pro se* petition for a writ of prohibition in the WVSC, asking that the hearing be stayed and that the Circuit Court be compelled to allow Meade to withdraw his amended petition and to provide him with new habeas counsel.

While there is "no talismanic number of years or months" at which a delay becomes inordinate, thirty-five months have passed since Meade filed his state habeas petition, which is long enough to trigger an examination into the circumstances underlying the petition. *Coe v. Thurman,* 922 F.2d 528, 531 (9th Cir. 1990) (finding a four-year delay to be "alarming"); *also Workman v. Tate,* 957 F.2d 1339, 1344 (6th Cir. 1992) (failure to exhaust state remedies was excused where habeas petitioner's motion for post-conviction relief "languished" in the state courts for more than three years). Nonetheless, courts have generally required longer periods of delay to justify a waiver of the AEDPA's exhaustion requirement. *See, e.g., Gardner v. Plumley*, No. 2:12-CV-03386, 2013 WL 5999041, at *7 (S.D. W. Va. Nov. 12, 2013) (finding that a "twenty-year delay in deciding the petitioner's

state court case is an extraordinary circumstance that warrants serious concern."); *Lee v. Stickman,* 357 F.3d 338, 343-44 (3rd Cir. 2004) (exhaustion excused as futile when post-conviction relief was pending in state court for eight years); *Mathis v. Hood,* 851 F.2d 612, 614-15 (2d Cir. 1988) (six-year delay in direct appeal excused exhaustion of state remedies); *but see Cook v. Florida Parole and Probation Comm'n,* 749 F.2d 678, 679-80 (11th Cir. 1985) (three-and-one-half-year delay in ruling on petitioner's motion for post-conviction relief was unfortunate, but did not justify excusing exhaustion requirement); *Booker v. Kelly*, 636 F. Supp. 319, 321-22 (W.D.N.Y. 1986) (three-year delay in appeal caused by ineffectiveness of defense counsel was not the equivalent of a complete absence of state corrective procedure).

Furthermore, in the Fourth Circuit, "the length of delay is not a determinative factor when some of the delay is attributable to [the] petitioner." *Walkup v. Haines*, No. 5:04-1283, 2005 WL 2428163, at *3 (S.D. W. Va. Sept. 30, 2005) (citing *Matthews v. Evatt,* 51 F.3d 267, 1995 WL 149027, at *1 n.* (4th Cir. 1995) (unpublished table decision) (holding four-year delay did not excuse exhaustion where some of the delay was attributable to petitioner)). In the instant action, when viewing the record in the light most beneficial to Meade, some delay is certainly attributable to the Circuit Court; primarily, related to its failure to promptly lift the stay. At the same time, Meade also bears responsibility for the length of time it has taken to resolve his state habeas petition.

Apart from the seven months that it took the Circuit Court to rule on Meade's motion to lift the stay and appoint new counsel, the other delays in the process have been due largely to Meade's own actions. Meade requested a stay of his habeas petition to file a direct appeal and spent a year pursuing the direct appeal. He then demanded the appointment of new habeas counsel and requested an extension of time to amend his

habeas petition. After taking two additional months to file the amended petition, Meade quarreled with new habeas counsel, filed a motion to withdraw the amended petition, and again demanded the appointment of co-counsel, or replacement counsel. These actions by Meade required an additional status conference and a rescheduling, for the third time, of his omnibus evidentiary hearing. Dissatisfied with the Circuit Court's rulings, Meade filed a petition for a writ of prohibition with the WVSC, which effectively stopped the habeas proceeding in its tracks. Therefore, most of the prior delay and all of the current delay is attributable to Meade. In view of the role played by Meade in delaying resolution of his habeas petition, the first two *Barker* factors do not weigh in favor of removing the AEDPA's exhaustion barrier.

When considering the remaining *Barker* factors, the circumstances in this case do not rise to the level of a due process violation. With respect to the third factor, Meade has repeatedly asserted his rights; thus, that factor is resolved to his benefit. In contrast, the fourth factor does not weigh in favor of excusing exhaustion as no apparent prejudice has resulted from the delay. Meade has not articulated any particular harm, except to point out that he is of advancing age. However, Meade is hard-pressed to effectively raise this argument when he lost seven critical years (from age 60 to 67) by failing to initiate an appeal or a habeas proceeding. Meade believes that his dissatisfaction with current counsel is sufficient to constitute prejudice, yet he provides no support to bolster that position. Meade's history of discontent with his prior lawyers, with the presiding state court judge, and with the state process in general undermines the urgency and reliability of his current complaints, which are too amorphous to constitute evidence of prejudice. Moreover, relative to any overarching due process concerns, Meade has been appointed counsel by the state a number of times, and he has been permitted to file *pro se* documents

13

with both the Circuit Court and the WVSC.

The tone of Meade's filings suggests that he seeks a waiver of the exhaustion requirement not because he has been prejudiced by the alleged delay, but because he finds the state's post-conviction process and its court-appointed attorneys to be a waste of his time. He complains that "allowing petitioner to proceed in the state court with a dump-truck lawyer will end up in procedural default," and "[t]he instant case will fall in the huge West Virginia purduced [sic] rut of defaulted cases." (ECF No. 14 at 3). Meade clearly fails to appreciate the role of federal habeas corpus in state court judgments. "The limited scope of federal review of a state petitioner's habeas claims, as established by AEDPA, is grounded in fundamental notions of state sovereignty." *Richardson v. Branker*, 668 F.3d 128, 138 (4th Cir. 2012) (citation omitted). As such, the "AEDPA restricts that intrusion of state sovereignty by limiting the federal courts' power to issue a writ to exceptional circumstances, thereby helping to ensure that 'state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state court proceedings." *Rose,* 455 U.S. at 518. While the exhaustion requirement is not jurisdictional, for these stated reasons, it should be strictly enforced. *Id.* at 522.

Meade has the burden of establishing that the state court proceedings have been "so clearly deficient as to render futile any effort to obtain relief." *Duckworth,* 454 U.S. at 3. He has plainly failed to meet that burden. Accordingly, given the current posture of the state proceeding, the undersigned **FINDS** that Meade has failed to exhaust his state

remedies and has not raised sufficient grounds to justify excusing the exhaustion requirement of 28 U.S.C. § 2254.

## IV.    **Proposal and Recommendations**

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows**:**

1.      The Motion by Glen R. Meade to Proceed with § 2254 Petition Due to Inordinate Unjustifiable Delay, (ECF No. 1), and Amended Motion to Proceed with § 2254 Petition Due to Inordinate Unjustifiable Delay, (ECF No. 5), be **DENIED**;

2.      The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, (ECF No. 4), be **DISMISSED, without prejudice**, so that Meade may exhaust his state court remedies;

3.      Meade's miscellaneous motions be **DENIED**, as moot; and

4.      This action be removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of

Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Copenhaver and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and counsel of record.

**FILED:** March 2, 2017

Cheryl A. Eifert
United States Magistrate Judge